```
                    United States District Court
                      District of Massachusetts
_____
                              )
FRANK A. GAY,                 )
         Plaintiff,           )
                              )
         v.                   )   Civil Action No.
                              )   07-10276-NMG
STONEBRIDGE LIFE INSURANCE    )
COMPANY,                      )
         Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a breach of contract claim brought by the plaintiff, Frank A. Gay, acting as the Executor of the estate of his sister, Anita Gay ("Ms. Gay"), against Stonebridge Life Insurance Company ("Stonebridge"). After a jury returned a verdict in favor of the defendant, the plaintiff moved for a new trial.

## I. Background

At the time of Ms. Gay's death (in March, 2006), she was insured under three policies of insurance issued by Stonebridge providing benefits in the case of "accidental death". The plaintiff claimed that he was entitled, as a beneficiary, to the benefits payable under the policies on the basis that Ms. Gay died from an accidental fractured skull. Stonebridge denied the claim on the grounds that Ms. Gay died of a stroke and was

-1-

therefore ineligible for benefits.

In February, 2010, the case was tried to a jury in this Court. The single factual issue in the case was whether the dominant cause of Ms. Gay's death was an accidental skull fracture or a stroke. On February 17, 2010, after less than two days of evidence and one hour of jury deliberations, the jury returned a verdict in favor of the defendant.

The plaintiff now seeks a new trial pursuant to Fed. R. Civ. P. 59(a) on the grounds that, in violation of Fed. R. Civ. P. 26(a)(2)(B), the defendant's medical expert, Dr. Paul Rizzoli ("Dr. Rizzoli"), expressed two opinions at trial that he had not previously disclosed in his reports.

## II. Legal Analysis

### A. Legal Standard

Pursuant to Fed. R. Civ. P. 59(a), a district court may

> set aside a verdict and order a new trial if, in its opinion, the verdict is against the clear weight of the evidence, is based upon evidence that is false, or resulted from some trial error and amounts to a clear miscarriage of justice.

Payton v. Abbott Labs, 780 F.2d 147, 152 (1st Cir. 1985). The court's discretion, although great, "must be exercised with due regard to the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial." Coffran v. Hitchcock Clinic, Inc., 683 F.2d 5, 6 (1st Cir. 1982). The district judge may not, therefore, "displace a jury's verdict

merely because he disagrees with it or would have found otherwise in a bench trial." Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996) (internal citation omitted).

**B.   Application**

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), a party who wishes to present expert testimony at trial must provide the other party with a written report, prepared and signed by the expert witness, that includes, inter alia, a "complete statement of all opinions the witness will express and the basis and reasons for them."

At trial, Dr. Rizzoli testified that 1) Ms. Gay's skull fracture was not a significant injury and 2) the stroke Ms. Gay sustained was severe and likely fatal.  The plaintiff asserts that those two opinions had not been disclosed to him before the trial as required by the subject rule and should therefore not have been admitted into evidence.  Although the defendant had provided the plaintiff with two expert reports written by Dr. Rizzoli, the plaintiff contends that those reports were limited to the issue of whether Ms. Gay suffered a stroke and that neither of them contained the two opinions that Dr. Rizzoli offered at trial.[1]

The plaintiff insists that had Dr. Rizzoli's opinions been properly disclosed before trial, he would have exercised his

---

[1] Plaintiff's counsel objected to the opinions offered by Dr. Rizzoli at trial and, after the Court overruled his objection, he moved to strike the testimony from the record.

right to present rebuttal testimony pursuant to Fed. R. Civ. P. 26(a)(2)(C)(ii) and would have called, as an expert witness, forensic pathologist Dr. George Lauro ("Dr. Lauro") to challenge Dr. Rizzoli's conclusions.  The plaintiff contends that this was a close case and that the verdict rested almost exclusively on the jury's consideration of the expert testimony presented by both sides.  He maintains that the Court's admission of Dr. Rizzoli's previously undisclosed opinions, with no effective opportunity for rebuttal, is, therefore, grounds for a new trial.

A new trial in this case is unwarranted.  The purpose of Rule 26's expert disclosure requirements is to "minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R., 248 F.3d 29, 35 (1st Cir. 2001) (citation omitted).  See also Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) (stating that Rule 26 reports are "consonant with the federal courts' desire to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent").  Rule 26(a)(2)(B) does not, however, require rigid adherence to the exact terminology employed by an expert in his report.  Although an expert report must contain a "complete statement of all opinions the witness will express," that statement need not include the precise language that the expert

will employ at trial.  See Thorndike v. Daimler Chrystler Corp., 288 F. Supp. 2d 50, 55 (D. Me. 2003) (Rule 26 "does not require that a report recite each minute fact or piece of scientific information that might be elicited on direct examination") (internal citation omitted).

Although Dr. Rizzoli's expert report did not explicitly state that the stroke, by itself, was fatal or that it was the "dominant cause" of Ms. Gay's death, the report's findings, when read together, certainly imply such a conclusion.  The report states, in relevant part:

1) "that cerebral hemorrhage presented in this case seems certain";

2) "the amount of bleeding described seems out of proportion to that which could be expected on the basis of trauma alone"; and

3) "it is my opinion ... that a preceding hypertensive cerebral hemorrhage did in fact lead to unconsciousness, that as a result the patient fell sustaining a serious head injury, and that the hypertensive cerebral hemorrhage was a contributing cause of death."

The Court finds that Dr. Rizzoli's report was sufficiently thorough 1) to indicate the general boundaries of his direct examination and 2) to put the plaintiff on notice that he would likely testify that the stroke was the primary cause of Ms. Gay's death.

Moreover, to the extent that the opinions in Dr. Rizzoli's report varied slightly from those he later expressed at trial,

the differences were, in all likelihood, immaterial.  Dr. Rizzoli's opinions regarding the significance of Ms. Gay's stroke were corroborated by other evidence, including hospital records, the autopsy report and death certificate and the testimony of the plaintiff's own expert, Dr. Matthew Gold.  The Court finds, therefore, that there would have been sufficient evidence for the jury to conclude that a stroke was the "dominant cause" of Ms. Gay's death even if Dr. Rizzoli had not offered that opinion at trial.

Finally, the plaintiff was not prejudiced by his professed inability to call a rebuttal expert.  Plaintiff's counsel effectively challenged Dr. Rizzoli's conclusions during cross-examination by reading from parts of his expert report as well as from Dr. Lauro's deposition.

In sum, it cannot be said with any degree of certainty that the outcome of this trial would have been different had the Court limited Dr. Rizzoli's testimony to the exact language he used in his report.  Accordingly, there has been no "clear miscarriage of justice" and a new trial is unwarranted.

## ORDER

In accordance with the foregoing, Plaintiff's motion for a new trial (Docket No. 57) is **DENIED.**

**So ordered.**

                                         /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated May 3, 2010